UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
SECURITIES AND EXCHANGE COMMISSION, )
                                    )
        Plaintiff,                  )
                                    )
     v.                             )   Case No. 1:18-cv-12058-RGS
                                    )
ROGER KNOX, WINTERCAP SA,           )
MICHAEL T. GASTAUER, WB21 US        )
INC., SILVERTON SA INC., WB21 NA    )
INC., C CAPITAL CORP., WINTERCAP    )
SA INC. AND B2 CAP INC.             )
                                    )
        Defendants,                 )
     and                            )
                                    )
RAIMUND GASTAUER, SIMONE            )
GASTAUER FOEHR, AND B21 LTD.        )
SHAMAL INTERNATIONAL FZE, AND       )
WB21 DMCC                           )
                                    )
        Relief Defendants.          )
_____ )

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENTS**

As requested by the Court in its order dated December 17, 2018, *see* Dkt. No. 65, plaintiff Securities and Exchange Commission ("Commission") submits this supplemental memorandum of law in support of its motion for default judgments as to defendants WB21 US Inc., Silverton SA Inc., WB21 NA Inc., C Capital Corp., Wintercap SA Inc., and B2 Cap Inc. (collectively the "Entity Defendants"). Specifically, in this memorandum, the Commission submits that a third-tier civil penalty of $923,831 should be imposed on each of the Entity Defendants as a component of the default judgments that the Commission has requested against each of them.

## A SINGLE THIRD TIER PENALTY IS THE APPROPRIATE PENALTY FOR EACH OF THE ENTITY DEFENDANTS

The Commission requests that the Court impose a single third-tier penalty against each of the Entity Defendants. The relevant third-tier penalty amount for the Entity Defendants' violations, which occurred after November 2, 2015, is $923,831. *See* 15 U.S.C. §77t(d)((2); 15 U.S.C. §78u(d)(3)(B); 17 C.F.R. §201.1001(b); Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (as of January 15, 2018), *available at* https://www.sec.gov/enforce/civil-penalties-inflation-adjustments-pdf.pdf .

The Commission believes that third-tier penalties are warranted here because the Entity Defendants aided and abetted fraud and their violations directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons who decided to buy the microcap securities dumped into the market by Knox and his entity, Wintercap. *See, e.g., Rizek v. SEC*, 215 F.3d 157, 163-64 (1st Cir. 2000) (upholding Commission's imposition of third-tier penalty against defendant who churned multiple customer accounts); *Tropikgadget*, 2016 WL 4555595, *8 (imposing third tier penalty against defendants who conducted a large-scale pyramid scheme).

Even though the Securities Act and the Exchange Act permit civil penalties to be imposed on a "per violation" basis, the Commission believes that a civil penalty for a single violation would be appropriate in this case. While the Entity Defendants handled large sums of money as part of laundering the proceeds of this fraudulent scheme, the Commission has already requested that the Court award significant sums of disgorgement and prejudgment interest against them as follows:

| Entity Defendant | Disgorgement | Prejudgment Interest | Total Disgorgement Plus Prejudgment Interest |
|---|---|---|---|
| Silverton SA Inc. | $116,588,918 | $1,954,511 | $118,543,429 |
| Wintercap SA Inc. | $2,808,900 | $23,472 | $2,832,372 |
| WB21 US Inc. | $125,673,503 | $1,050,148 | $126,723,651 |
| WB21 NA Inc. | $12,344,945 | $206,952 | $12,551,897 |
| C Capital Corp. | $15,332,672 | $386,776 | $15,719,448 |
| B2 Cap Inc. | $1,496,728 | $12,507 | $1,509,235 |

If awarded by the Court, these disgorgement and prejudgment interest amounts will likely consume most or all of the assets belonging to the Entity Defendants. The statutory civil penalty amount of $923,831 would provide meaningful additional relief without imposing sums so large that they would have no chance of being collected.

As outlined in *SEC v. Sargent*, 329 F.3d 34, 42 (1st Cir. 2003), courts may take six factors into account when determining whether to assess civil penalties in Commission enforcement actions:

> (1) the egregiousness of the violations; (2) the isolated or repeated nature of the violations; (3) the defendant's financial worth; (4) whether the defendant concealed his trading; (5) what other penalties arise as the result of the defendant's conduct; and (6) whether the defendant is employed in the securities industry.

Other courts look to these factors as well as a defendant's scienter, a defendant's failure to admit to its wrongdoing, and its cooperation and honesty with authorities. *See SEC v. Weed*, 315 F. Supp. 3d 667, 677 (D. Mass. 2018); *SEC v. Esposito*, 260 F. Supp. 3d 79, 93 (D. Mass. 2017).

Applying these factors here weighs heavily in favor of the $923,832 penalty requested. First, the Entity Defendants, under Gastauer's control, aided and abetted egregious securities law violations by lying to banks and brokerage firms to allow the Knox, Wintercap, and their control group business partners to launder the proceeds of securities fraud schemes involving at least 50

U.S. publicly traded companies. *See* Complaint ¶¶1, 87, 92-93, 96, 97, 100-101. Gastauer knew that he was lying to banks and brokerage firms on behalf of the Entity Defendants when he caused those firms to represent that they were venture capital firms or private investment vehicles and failed to disclose that they were really laundering proceeds from the Knox Defendants' schemes. *See* Complaint ¶¶92, 96, 97, 100-102.

Second, the Entity Defendants' misconduct was not isolated -- but rather the entire purpose of their existence. *See* Complaint ¶99. Their misconduct spanned several years and involved the formation of at least 20 bank accounts to launder the proceeds of fraud. *See id.* ¶¶92-102. Their fraud was not an isolated instance of misconduct, but rather a series of actions taken to facilitate the concealment of a wide-ranging securities fraud scheme. *See, e.g., SEC v. Universal Express, Inc.,* 475 F. Supp. 2d 412, 429 (S.D.N.Y. 2007), *aff'd sub nom, SEC v. Altomare*, 300 Fed. Appx. 70 (2d Cir. 2008) (third-tier penalties appropriate where "defendants engaged in numerous and inexcusable instances of securities law violations over the course of at least four years"); *SEC v. Lybrand*, 281 F. Supp. 2d 726, 731 (S.D.N.Y. 2003) (third-tier penalties awarded) ("Far from being an isolated event, the actions of these men involved a multitude of improper securities transactions that occurred over several months – they violated the securities laws repeatedly and with regularity."). Unlike defendants who engage in misconduct ancillary to their main business, the very purpose for the Entity Defendants' existence was to facilitate fraud. *See* Complaint ¶¶92, 98-99, 102.

Third, the Entity Defendants' financial worth is unclear, but they clearly have some ability to pay a judgment that will be issued against them because all of their bank accounts of which the Commission is aware were frozen pursuant to this Court's temporary restraining order and preliminary injunction. *Cf. SEC v. Spencer Pharmaceutical Inc.*, No. 12-cv-12334, 2015

WL 5749436, *8 (D. Mass. Sept. 30, 2015) (imposing civil penalty against even defunct corporate entities to prevent them from profiting if they are later recapitalized); *SEC v. Present*, No. 14-cv-14692, 2018 WL 1701972, *5 (D. Mass. Mar. 20, 2018) (imposing civil penalty of $1,575,000 against defendant who was presumed insolvent but had substantial future earning capability). Further, the Entity Defendants have refused to provide the Court-ordered accounting that would permit the Commission to identify any other assets they possess, and their refusal to comply with that Court order should not weigh in their favor when determining a civil penalty. *See* Dkt. No. 9, ¶IX (accounting provision of TRO); Dkt. No. 57, ¶IX (accounting provision of PI).

While the fourth factor relates to insider trading and is not directly relevant here, it may be considered more broadly as whether the defendants acted deceptively in committing their securities violations. Here, as discussed above, the Entity Defendants concealed their true nature, and lied to banks and brokerage firms about their purpose in order to provide the money laundering services they facilitated. *See* Complaint ¶¶92, 96, 97, 100-102. This fact accordingly weighs in favor of a penalty.

Fifth, there are presently no other penalties that would be imposed as the result of the Entity Defendants' conduct. They have not been criminally charged, nor is there, to the Commission's knowledge, other private litigation against them related to the conduct alleged in the Complaint. *See Weed*, 315 F. Supp. 3d at 677 (imposing one time statutory third tier penalty on defendant whose criminal sentence included fines and forfeiture); *contrast Sargent*, 329 F.3d at 42 (noting that defendant was sentenced criminally for the same misconduct as factor weighing against civil penalty).

Sixth, while the defendants were not "employed in the securities industry" (a factor that

is more relevant for individuals than for corporate entities), their sole purpose for existence was to provide bank accounts that facilitated the fraudulent scheme described in the Complaint. *See* Complaint ¶¶92, 98-99, 102. Thus, to the extent this factor is weighed, it counsels in favor of a third tier penalty because the logical purpose of this factor – to curtail violators routinely involved in the securities industry – would be advanced by imposing penalties on the Entity Defendants whose sole business activity was related to the promotion of securities fraud.

WHEREFORE, the Commission requests that the Court impose civil penalties of $923,831 against each of the six Entity Defendants.

January 28, 2019

Respectfully submitted,
SECURITIES AND EXCHANGE COMMISSION
By its attorneys,

/s/ Kathleen Shields
Rebecca Israel
Kathleen Shields
David M. Scheffler
Jonathan Allen
Eric Forni
33 Arch Street, 24th Floor
Boston, MA 02110
Telephone: (617) 573-8904 (Shields direct)
Fax: (617) 573-4590
Email: shieldska@sec.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2019, a true and correct copy of the foregoing document was filed through the Court's CM/ECF system, and accordingly, the document will be sent electronically to all participants registered to receive electronic notice in this case. A copy will also be sent via first class mail and/or email to those parties who have not yet registered for notice via the Court's CM/ECF system.

　　/s/ Kathleen Shields
Kathleen Shields