UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> ROGER KNOX, WINTERCAP SA, MICHAEL T. GASTAUER, WB21 US INC., SILVERTON SA INC., WB21 NA INC., C CAPITAL CORP., WINTERCAP SA INC. AND B2 CAP INC. <br><br> Defendants, <br> and <br><br> RAIMUND GASTAUER, SIMONE GASTAUER FOEHR, B21 LTD., SHAMAL INTERNATIONAL FZE, AND WB21 DMCC <br><br> Relief Defendants. | Case No. 1:18-cv-12058-RGS |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
<u>OPPOSITION TO CERTAIN RELIEF DEFENDANTS' MOTIONS TO DISMISS</u>**

Plaintiff Securities and Exchange Commission (the "Commission") opposes the Motions to Dismiss filed by relief defendants Raimund Gastauer, B21 Ltd., and WB21 DMCC (collectively referred to herein as the "Relief Defendants"). <u>See</u> Dkt. Nos. 118 – 123-1. The Relief Defendants contend that the Court should dismiss the Commission's claims against them for lack of personal jurisdiction. The Court should decline to do so because: 1) the Relief Defendants' receipt and acceptance of substantial sums of money that are the proceeds of a United States fraud scheme are sufficient to establish independent personal jurisdiction over them, and 2) the Court's personal jurisdiction over defendant Michael Gastauer and the

defendant entities is sufficient to sustain claims over the assets held in the names of Michael Gastauer's foreign nominees.

This Court is empowered to exercise jurisdiction over claims against people who did not violate the securities laws when it is necessary to ensure a complete remedy against people who did violate those laws. Here, the Relief Defendants—close family members and affiliated entities of defendant Michael Gastauer—are, in actuality, nominal defendants with no legitimate claim to more than $4 million of victims' money. This money was derived from a massive penny stock fraud scheme that Michael Gastauer substantially assisted. The Relief Defendants now concede that they did not earn the money subject to the Commission's claims, and they have conspicuously provided no information about why and how they happened upon millions of dollars of illegal stock sale proceeds.

As set forth below, the Court should not allow—and has the power to prevent—Michael Gastauer's efforts to evade the reach of this Court by transferring illegally obtained money to family members who reside outside of the United States. The Relief Defendants' motions, therefore, should be denied.

## BACKGROUND

On November 15, 2018, the Commission filed the Amended Complaint (the "Complaint") in this matter charging a number of defendants with engaging in a multi-year fraudulent scheme involving a number of foreign accounts and nominee entities. See Dkt. No. 54. The Complaint includes a claim for equitable relief (including unjust enrichment and constructive trust) against Raimund Gastauer, B21 Ltd, and WB21 DMCC for the reasons outlined below. Id. at ¶ 42.

### A.     Raimund Gastauer

The Commission alleges in the Complaint that Raimund Gastauer and Simone Gastauer are relatives of Michael Gastauer.  Complaint, ¶ 20.  Based on additional information, the Commission believes that Raimund Gastauer is Michael Gastauer's father.  See Declaration of Trevor Donelan ("Donelan Decl."), ¶ 6 (attached hereto as Exhibit 1).  The Commission alleges that Michael Gastauer substantially assisted a massive stock fraud by essentially laundering the proceeds of Roger Knox's illegal stock sales and keeping some of that money for himself.  See, e.g., Complaint, ¶¶ 10, 139-142.  Michael Gastauer transferred, directly or indirectly, some of that money to his family members, including Raimund Gastauer.  Complaint, ¶¶ 20, 108.  Specifically, Michael Gastauer caused two of his United States-based entities (also defendants in this matter) to transfer approximately $3.3 million from the United States to an account held for the benefit of Raimund Gastauer.  Complaint, ¶ 108.

Raimund Gastauer does not dispute that he received this money.  See generally Dkt. Nos 118 – 119.  And, Raimund Gastauer concedes that he provided no valid consideration for what otherwise should be victims' funds because, according to Raimund Gastauer, "I have never obtained any income . . . in the United States" (Dkt. No. 119-1 at 2) and he "has never transacted business in the United States."  Dkt. No. 119 at 1.  Though he disclaims any relationship with the United States, Raimund Gastauer fails to provide any explanation for why his son—who operated a number of United States-based businesses—transferred millions of dollars derived from those United States businesses to him.

### B.     B21 Ltd. and WB21 DMCC

The Commission believes that Phillip Gastauer is Michael Gastauer's son.  Donelan Decl., ¶ 7.  Phillip Gastauer purports to be a director of B21 Ltd. and WB21 DMCC.  See

3

Complaint, ¶ 23; Dkt. Nos. 121-1 at 2 and 123-1 at 2; Donelan Decl., ¶ 11.  As described in the Complaint, Michael Gastauer transferred approximately $560,000 from U.S. entity (and defendant) C Capital Corp. to B21 Ltd., and approximately $1.3 million from U.S. entity (and defendant) WB21 NA Inc. to WB21 DMCC.  Complaint, ¶¶ 110, 112.  In other words, Michael Gastauer transferred millions of dollars to offshore businesses purportedly owned by his son for no apparent legitimate reason.

In addition to the foregoing, Phillip Gastauer is, on paper, the owner of defendant B2 Cap Inc., a United States entity.  Donelan Decl., ¶ 8.[1]  Phillip Gastauer, therefore, has purposefully availed himself of the United States laws.  Recently, the Commission obtained evidence revealing that B2 Cap Inc. transferred approximately $750,000 to WB21 DMCC in June and August 2018.  Donelan Decl., ¶¶ 9-10.  Phillip Gastauer thus appears to have directed the transfer of approximately $750,000 from a United States-based entity under his control to a "different" foreign entity that is also under his control.  He now wants the Court to dismiss the Commission's claim against that foreign entity—WB21 DMCC—for want of personal jurisdiction over it.  Dkt. Nos. 121-1 at 2 and 123-1 at 2.  Phillip Gastauer does not dispute that the Court has personal jurisdiction over B2 Cap Inc.  Phillip Gastauer, like Raimund Gastauer, conspicuously provides no explanation for why he and/or Michael Gastauer transferred millions of dollars to these clearly related Relief Defendants.

## ARGUMENT

The Gastauers seek to create an enormous loophole to benefit fraudsters by asking this Court to hold that all one needs to do to avoid the reach of the United States judicial system is to:

---

[1] The Commission alleges that Michael Gastauer operated B2 Cap. Inc, directly or indirectly.  Complaint, ¶ 19.  While the Commission continues to believe that Michael Gastauer is the person actually controlling this entity, Phillip Gastauer is identified as the owner of the company in account opening forms.  Donelan Decl., ¶ 8.

(1) create offshore entities with slightly different names than their United States counterparts (compare, e.g., relief defendant "WB21 DMCC" with defendants "WB21 US Inc." and "WB21 NA Inc.") or find a foreign family member (e.g., Raimund Gastauer), (2) carefully conduct no business in the United States in the names of those "different" offshore nominees to avoid any claim of purposeful minimum contacts, or ensure that the foreign family member does not travel here or otherwise conduct business here himself; and (3) then move money from the United States to those "different" offshore nominees and/or the foreign family member.  That approach evidences a flagrant disregard for, and circumvention of, United States laws.  To allow such a scheme to succeed would effectively enable any defendant in a Commission action to set up an offshore entity under his control, transfer money to it, and thereby avoid any meaningful relief in the United States.  The Court's equitable powers should be exercised to prevent this injustice.

### A.     The Court Has Jurisdiction Over Assets Nominally Held by Third Parties.

Among other things, the Relief Defendants claim that the Court does not have jurisdiction over them because they have no minimum contacts with the United States.  In particular, the Relief Defendants contend that they did not purposefully avail themselves of the United States because they did not derive any income from the United States or otherwise conduct business here.  But, this admission means that the Relief Defendants have done nothing to earn the millions of dollars Michael and/or Phillip Gastauer sent to them.  And, while they may not have "earned" any income from the United States, they certainly received and accepted money from the United States.

Indeed, the Relief Defendants have offered no explanation for why they received millions of dollars generated from illegal stock sales in the United States.  Their silence on this issue provides compelling evidence that they are really nominee account holders working in concert

with Michael Gastauer. "Although the paradigmatic example of a nominal defendant is a bank or trustee [that] has only a custodial claim to the property, the term is broad enough to encompass persons who are in possession of funds to which they have no rightful claim, such as money that has been fraudulently transferred by the defendant in the underlying securities enforcement action." SEC v. Ross, 504 F.3d 1130, 1141 (9th Cir. 2007). The Court can exercise its equitable powers to order relief, or nominal, defendants to return to victims the money to which the Relief Defendants have no legitimate claim. See FTC v. Direct Marketing Concepts Inc., 569 F. Supp. 2d 285, 311 (D. Mass. 2008) ("[t]he concept of 'relief defendants' originates from SEC proceedings. In that context, courts have held that equitable relief against an individual or corporation who is not accused of wrongdoing may be entered where that person has (1) received ill-gotten funds; and (2) does not have a legitimate claim to those funds") (internal quotations omitted); SEC v. Wencke, 783 F.2d 829, 838 (9th Cir.1986) (district court had jurisdiction over the assets of a corporation into which the defendant in the underlying enforcement action had funneled proceeds of his securities law violations).

Notwithstanding the foregoing, the Relief Defendants assume that the Court must treat them as if they are defendants in this action for purposes of assessing personal jurisdiction. But, courts have made clear that "[a] nominal defendant is not a real party in interest because he has no legitimate claim to the disputed property." Ross, 139 F.3d at 1141 (internal quotations omitted). The "real parties in interest" here are Michael Gastauer, who purposefully availed himself of United States laws by operating United States businesses and transacting through United States-based bank accounts, and defendants C Capital Corp, WB21 US, Inc., Silverton SA, Inc., Wintercap SA Inc, WB21 NA Inc., and B2 Cap Inc. (the "Gastauer Entity Defendants"), which were each formed and operated in the United States. This Court, therefore,

indisputably has personal jurisdiction over Michael Gastauer and the Gastauer Entity Defendants. Consequently, this Court has jurisdiction over assets belonging to Michael Gastauer and the Gastauer Entity Defendants, wherever they may be held. See, e.g., Gucci America, Inc. v. Weixing Li, 2011 WL 6156936, at *4 (S.D.N.Y. Aug. 23, 2011) (district courts possess the power to restrain defendants' assets whether they are located domestically or abroad).

In light of the foregoing, the question before this Court at this stage is whether the Commission's pleadings set forth sufficient allegations which, if proven, would allow this Court to exercise its equitable powers to order the defendants, and the related Relief Defendants, to repatriate assets held offshore to satisfy a judgment. As explained below, the answer to that question is yes.

The Court's ability to protect investors is derived from its equitable powers under the federal securities laws and those inherent to the judiciary. Section 22(a) of the Securities Act of 1933 [15 U.S.C. §77v(a)] and Section 27 of the Securities Exchange Act of 1934 [15 U.S.C. §78aa] "confer general equity powers upon district courts that are invoked by a [proper] showing of a securities law violation." Smith v. SEC, 653 F.3d 121, 127 (2d Cir. 2011) (internal citations omitted). Upon such a showing, "the court has power to order all equitable relief necessary under the circumstances .... [i]ncluding the impoundment of assets." Smith, 653 F.3d at 127.

To be sure, if Michael Gastauer transferred millions of dollars to an account in his name in a different country, instead of to his father or son, the law is clear that the Court could order Michael Gastauer to repatriate those assets. See SEC v. Thibeault, 80 F. Supp. 3d 288, 293 (D. Mass. 2015) (ordering repatriation and noting that "once equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy"); SEC v. Illarramendi, 2011 WL 2457734, at

* 6 (D. Conn. June 16, 2011) (same). The fact that Michael Gastauer has created a shell game involving his family, who have offered no legitimate claim to the funds, does not change the analysis. Indeed, district courts routinely use their equitable power in the context of securities enforcement actions to order the turn over of assets nominally held by third parties, like the Relief Defendants. See SEC v. Zubkis, 2005 WL 1560489 at *4 (S.D.N.Y. June 30, 2015) ("[t]he Court may use [its] broad equitable power to order the turnover of assets nominally held by third parties where the third party lacks a legitimate claim to the assets); SEC v. Martino, 255 F. Supp. 2d 268, 288 (S.D.N.Y. 2003) (ordering the sale of a yacht placed in the name of a relief defendant but paid for by the defendant because "[t]he disgorgement of unjustly retained wealth is a long-standing remed[y] that [is] within a court's equity powers" and this inherent equitable power "certainly extends to a person who, although not accused of wrongdoing, received ill-gotten funds and does not have a legitimate claim to those funds") (internal quotation marks and citations omitted).

The Court, therefore, should continue to restrain the Relief Defendants' assets subject to this case pursuant to the Preliminary Injunction Order, and allow the litigation to proceed in anticipation of ultimately exercising its equitable powers to ensure that those assets can be used to satisfy any judgment.

    **B.    The Commission Has Sufficiently Pled Minimum Contacts and Discovery Should be Allowed to Further Develop the Record.**

To the extent the Court concludes that it must analyze whether it has personal jurisdiction over the Relief Defendants independently from their clear nexus to the defendants, the Relief Defendants' Motions to Dismiss should be denied on that basis as well. The Commission has adequately pled that each Relief Defendant has minimum contacts with the United States.

For example, the Commission alleges that each Relief Defendant engaged in transactions with United States-based entities, which transactions were routed through United States bank accounts. Complaint, ¶¶ 107-108, 110, 112. The Relief Defendants have availed themselves of the United States laws by engaging in financial transactions with and through the United States, and have benefited handsomely from money derived from United States-based conduct. These allegations are sufficient to allow this case to proceed into discovery. See Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992) ("[t]he most commonly used method of determining a motion to dismiss for want of personal jurisdiction is for the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction").[2]

Raimund Gastauer, nonetheless, asks the Court to credit his declaration and conclude that his son unilaterally sent him $3.3 million dollars and, therefore, Raimund Gastauer did not purposefully available himself of the United States. Again, Raimund Gastauer provides no explanation for why he received millions of dollars from an entity operating in the United States, or from his son who did business in the United States.

B21 Ltd. and WB21 DMCC similarly ask this Court to believe that Michael Gastauer randomly and unilaterally transferred an aggregate of over $1 million to them (i.e., his son). But, B21 Ltd.'s and WB21 DMCC's position is even more suspect because Phillip Gastauer actually transferred money from B2 Cap Inc. (his United States-based company) to WB21 DMCC (his foreign company). The idea that Phillip Gastauer is somehow transferring money between his

---

[2] In addition to the foregoing, Raimund Gastauer and Phillip Gastauer both have email addresses at the gastuaer.com domain. Those email addresses are hosted in, and operate through, United States service providers. Donelan Decl., ¶ 12.

United States-based and foreign companies—while simultaneously managing to avoid imputing his clear minimum contacts with the United States to his foreign entities—is nonsensical.

In any event, the Relief Defendants' declarations, without more, are not a basis to dismiss this case given the Commission's allegations in the Complaint and the supplemental information in the Donelan Declaration.  To dismiss this case on the basis of the Relief Defendants' one-sided and unverified declarations would deprive the Commission and the Court of the ability to develop the record regarding the foregoing multimillion dollar transfers about which the Relief Defendants have proffered no legitimate claim.  At the very least, the Commission should be permitted to take jurisdictional discovery from Raimund Gastauer and from Phillip Gastauer, the purported director of B21 Ltd. and WB21 DMCC.

## CONCLUSION

For the reasons set forth above, the Commission respectfully requests that the Court DENY Raimund Gastauer's, B21 Ltd.'s, and WB21 DMCC's Motions to Dismiss.

April 23, 2019

Respectfully submitted,
SECURITIES AND EXCHANGE COMMISSION
By its attorneys,

/s/ Eric A. Forni
Eric A. Forni
Kathleen Shields
33 Arch Street, 24th Floor
Boston, MA 02110
Telephone: (617) 573-8827 (Forni direct)
Fax: (617) 573-4590
Email: fornie@sec.gov

## CERTIFICATE OF SERVICE

  I hereby certify that on April 23, 2019, a true and correct copy of the foregoing document was filed through the Court's CM/ECF system, and accordingly, the document will be sent electronically to all participants registered to receive electronic notice in this case. A copy will also be sent via first class mail and/or email to those parties who have not yet registered for notice via the Court's CM/ECF system.

             /s/ Eric A. Forni
             Eric A. Forni