UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br>                    **Plaintiff,**<br>     v.<br><br>**ROGER KNOX, WINTERCAP S.A., MICHAEL T. GASTAUER, WB21 US INC., SILVERTON SA INC., WB21 NA INC., C CAPITAL CORP., WINTERCAP SA INC. AND B2 CAP INC.**<br>                    **Defendants.**<br><br>**RAIMUND GASTAUER, SIMONE GASTAUER FOEHR, B21 LTD., SHAMAL INTERNATIONAL FZE, AND WB21 DMCC**<br>                    **Relief Defendants.** | Civil Action No. 1:18-CV-12058-RGS |

### DECLARATION OF TREVOR T. DONELAN

I, Trevor T. Donelan, pursuant to 28 U.S.C. §1746, hereby declare as follows:

1.   Since September 2014, I have been employed as an Enforcement Accountant with the U.S. Securities and Exchange Commission ("the Commission") in its Boston Regional Office. My duties include conducting investigations relating to potential violations of the federal securities laws.

2.   I received a Bachelor of Science degree in business administration, with a concentration in accounting, from the University of Richmond in Virginia in 2000. Before joining the Commission, I was most recently a managing director in the forensic accounting and complex business litigation unit at StoneTurn Group, LLP ("StoneTurn"), in Boston, where I worked for over seven years. Before joining StoneTurn, I held forensic accounting

1

and auditor positions for a total of approximately seven years with Deloitte Financial Advisory Services LLP, and Arthur Andersen LLP, both in Boston.

3.  I am a Certified Public Accountant in the Commonwealth of Massachusetts, and a Certified Fraud Examiner by the Association of Certified Fraud Examiners. I am also Certified in Financial Forensics by the American Institute of Certified Public Accountants.

4.  I make this Declaration based upon my personal knowledge and upon information and belief as set forth below, and in support of the Commission's opposition to the motions to intervene and for relief from the Asset Freeze Orders that were filed by City Group Alliance, Inc., which is a Marshall Islands company ("City Group MI").

5.  On or about February 9, 2017, I became actively involved in the Commission's investigation into possible violations of the federal securities laws by defendants Roger Knox ("Knox"), Wintercap SA, Michael Gastauer, and other affiliated businesses. In the course of that investigation, I reviewed documents and data produced to the Commission and attended witness interviews and testimony. The purpose of this declaration is to relay certain information that the Commission has gathered about City Group MI and its asserted principal through the review and analysis of certain documents.

6.  WB21 Pte., Ltd., is not an actual bank. *See* Exhibit A at 3 (12/6/17 email between Wintercap SA and WB21 NA Inc. employees discussing compliance issues raised because "[t]he problem with WB21 is that it is not a bank, but only an intermediary."). The WB21 Pte. Ltd. account statement is simply a ledger or journal showing the accounting for money held in actual bank accounts that are in the names of various entities related to WB21 Pte. Ltd., including the Gastauer Entity Defendants (defendants WB21 US Inc., WB21 NA Inc., Wintercap SA Inc., Silverton SA Inc., B2 Cap Inc., and C Capital Corp.) as well as

relief defendant, WB21 DMCC. I have reviewed actual bank account statements for those entities and they reflect the actual banking transactions that are reflected in the WB21 Pte. Ltd. account statements.

7. On March 13, 2018, Norland Estates Inc. ("Norland") made a wire transfer of CAD $3,000,349 from its account at Westminster Savings to a Wells Fargo bank account in the name of WB21 US Inc. *See* Exhibit B at page 2. Wells Fargo converted that payment into US $2,288,603.33. *See* Exhibit C at page 4 (Wells Fargo account statement for WB21 US Inc. for March 2018).

8. On May 2, 2018, Highpoint Drive Estates Inc. ("Highpoint") made a wire transfer of CAD $2,221,676 from its account at TD Canada Trust to a Wells Fargo bank account in the name of WB21 US Inc. *See* Exhibit D at pages 3-4. Wells Fargo converted that payment into US $1,697,717.74. *See* Exhibit E at page 3 (Wells Fargo account statement for WB21 US Inc. for May 2018).

9. When the transfers from Norland and Highpoint were made, Wintercap SA personnel emailed Gastauer and an employee of the Gastauer Entity Defendants and instructed them to credit these payments to a recently opened WB21 Pte. account in the name of City Group MI. *See* Exhibit B at page 2, Exhibit D at page 2.

10. As part of its work on this case, the Commission obtained bank records for Lakehouse Capital, Inc., ("Lakehouse"). These records show that a bank account was opened in December 2014 and demonstrate that British Columbian resident Yvonne Gasarch was the 100% owner of Lakehouse, as well as its President and sole Director. *See* Exhibit F at page 2, 8-10. Frederick L. Sharp was the Secretary of Lakehouse, and the entity's mailing address was 320-1100 Melville St. in Vancouver, British Columbia. *See id.*

3

11. The Commission obtained incorporation records from the official corporate registry of British Columbia for another company named City Group Alliance, Inc. ("City Group BC"). Those records show that its sole incorporator and director was Thomas Sharp, and its mailing address was the same as that for Lakehouse. *See* Exhibit G at page 3, 4. These records show City Group BC as having only two directors over time: Yvonne Gasarch and Tom Sharp. *See id.* at 2, 6. I have seen no records indicating that City Group BC has ever been a client of Wintercap SA.

12. I performed an internet search on City Group Alliance and located an article entitled "Alleged Tax Cheats Turn to Courts to Quash Federal Probe", available at https://biv.com/article/2017/03/alleged-tax-cheats-turn-courts-quash-federal-probe, which mentions City Group Alliance as a company owned by Thomas Sharp, the brother of Frederick Sharp. *See* Exhibit H at page 4.

13. After the funds from Norland and Highpoint were deposited into WB21 US Inc.'s bank account at Wells Fargo, they were dissipated almost immediately to satisfy outgoing wire transfers for other Wintercap SA clients, or transfers to defendant Gastauer personally or through a Gastauer-controlled relief defendant. *See* Exhibits C, E (WB21 US Inc. bank account statements).

14. Based on my review of the WB21 US Inc. account at Wells Fargo, immediately prior to the deposit of the March 13, 2018 Norland wire for about $2.2 million, the balance in the WB21 US, Inc. Wells Fargo account was approximately US $1.7 million. *See* Exhibit C at 4. Between March 13 and March 29, 2018 there were only US $114,000 in additional deposits into the WB21 US, Inc. account, but there were 13 wire transfers of US

$250,000 each to the Citibank account belonging to another of the Gastauer Entity Defendants, C Capital Corp., totaling US $3,250,000. *See id*. at 4-5.

15.   I have reviewed the Citibank account statements for C Capital Corp.'s account that received the $3.25 million described in paragraph 14 above. Before the initial $250,000 transfer from WB21 US, Inc. to C Capital Corp on March 13, 2018, the balance in the C Capital Corp. Citibank account was approximately $615,000. Between March 13 and March 29, 2018 the only additional source of funding for the C Capital Corp. account was the $3.25 million transferred from WB21 US, Inc.

16.   Between March 13 and March 29, 2018, there were approximately $3.9 million in withdrawals from the C Capital Corp Citibank account. These payments included:

- $770,000 wired to a Philippines-based company which was accounted for in WB21 Pte. Ltd.'s ledger as payments on behalf of two Wintercap SA client accounts other than City Group MI;

- $750,000 wired to purchase restricted stock in a U.S. public company which was purchased in the name of three Wintercap SA client accounts other than City Group MI,

- $543,148 wired directly to two Wintercap SA clients other than City Group MI,

- $250,000 wired to Relief Defendant, B21 Ltd. which was not accounted for in any of WB21 Pte. Ltd.'s ledgers for any Wintercap SA client accounts,

- $218,000 wired to defendant, Michael Gastauer, which was not accounted for in any of WB21 Pte. Ltd.'s ledgers for any Wintercap SA client accounts,

- $121,331.34 wired to Tesla Motors Switzerland GmbH, which was not accounted for in any of WB21 Pte. Ltd.'s ledgers for Wintercap SA client accounts, and,

- $15,000 wired to Virgilio Santana Ripoll. This payment, on March 22, 2018, was not accounted for in WB21 Pte. Ltd.'s ledger for City Group MI, the entity for which Mr. Ripoll is the beneficial owner. Instead, this payment was accounted for in the ledger for a *different* Wintercap SA account in the name of Hilton Capital, Inc. Hilton Capital, Inc. is incorporated in the Marshall Islands with a purported beneficial owner from Puerto Escondito, Colombia.

17. Similarly, immediately prior to the deposit of the May 2, 2018 Highland wire for about US $1.7 million, the balance in the WB21 US, Inc. Wells Fargo account was approximately US $740,500. *See* Exhibit E at 3. Between May 2 and May 30, 2018 there were about US $781,000 in additional deposits into the WB21 US, Inc. account. *See id.* at 3-5. By the end of May, all of the money in that account had been spent or transferred, leaving an ending balance of approximately negative US $1,500. *See* Exhibit E at 2, 5. US $150,000 of the funds leaving the WB21 US Inc. Wells Fargo account in May 2018 were paid directly to Abygail De Sousa, an employee of the Gastauer Entity Defendants. *See* Exhibit E at 3-4 ($50,000 each on 5/3/18, 5/8/18, and 5/9/18). Most of the funds leaving that account (over $2.5 million) were transferred to other bank accounts in the name of WB21 NA Inc. *See id.*

18. Based on my review of the bank accounts in the name of WB21 NA Inc. that received the $2.5 million described in paragraph 17 above, Ripoll received another $35,200 on May 23, 2018, which was charged to the Hilton Capital account at WB21 Pte. Ltd. rather than the City Group MI account. Additionally, WB21 NA Inc. spent about $1.2 million

6

from the same account described in paragraph 17 to purchase aircraft time from NetJets, a private jet company, for the use of Gastauer and the companies he controlled.

19. Knox and Wintercap SA kept track of the beneficial owners of their clients on a Swiss regulatory form called a "Form A." Amended Complaint, ¶58. On the Form A that Quezon Group, LLC provided to Wintercap SA, Ripoll is listed as its beneficial owner *See* Exhibit I. Quezon Group, LLC is a corporation based in Nevis, a small island in the Caribbean Sea. *See id.*

20. I have reviewed WB21 Pte. Ltd. account statements for Quezon Group LLC, with the account numbers ending 1582 (account denominated in Canadian dollars), 8395 (account denominated in Euros) and 1581 (account denominated in US dollars). Those account statements show, since Wintercap SA initiated its relationship with Gastauer and the Gastauer Entity Defendants in 2016, Wintercap SA has allocated over $14 million of its trading proceeds by transferring them into the Quezon Group accounts at WB21 Pte. Ltd.

21. The $14 million in trading proceeds allocated to Quezon Group and the banking transactions supporting those allocations were part of the bank, brokerage and WB21 Pte. Ltd. records that I reviewed in this case. I filed a previous declaration in support of the Commission's motion for a temporary restraining order showing that approximately $118.5 million was transferred from Wintercap SA's brokerage accounts into bank accounts in the names of the Gastauer Entity Defendants. *See* Dkt. No. 5, ¶¶15-20. Wintercap SA also received approximately $46.5 million of brokerage proceeds into bank accounts in its own name and transferred some of these funds into bank accounts in the names of the Gastauer Entity Defendants. Substantially all of the $14 million transferred to Quezon Group was generated from the $165 million in Wintercap SA trading proceeds.

22. From my review of the Quezon Group account statements, I can determine that less than $200,000 (or 1.5%) of this $14 million in trading proceeds was subsequently transferred to bank accounts in Ripoll's name.

23. The vast majority of the Wintercap trading proceeds allocated to Quezon Group were wired all over the world to beneficiaries with no discernible connection to Ripoll. For example, the WB21 Pte Ltd. account statement for Quezon Group reflected four outgoing wire transfers totaling $500,000 that were actually sent from WB21 US Inc.'s Citibank account between August 3-5, 2016 to a company that used those funds to pay for stock promotion campaigns for Oroplata Resources Inc. (ORRP) and Preston Corp. (PSNP). Both ORRP and PSNP are included as examples of the fraudulent scheme described in the Complaint. See Complaint, ¶90. Similarly, the WB21 Pte Ltd. account statement for Quezon Group reflected a wire transfer of $120,000 that was actually sent from WB21 US Inc.'s Citibank account on January 9, 2017 to a company that used those funds to pay for a stock promotion campaign for Vitality Biopharma, Inc. (VBIO). VBIO is included as an example of the fraudulent scheme described in the Complaint. See Complaint, ¶90.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 6, 2019, in Boston, Massachusetts.

_____
Trevor T. Donelan