UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>                    Plaintiff,<br>    v.<br>ROGER KNOX, WINTERCAP SA, MICHAEL T. GASTAUER, WB21 US INC., SILVERTON SA INC., WB21 NA INC., C CAPITAL CORP., WINTERCAP SA INC. AND B2 CAP INC.<br>                    Defendants.<br><br>RAIMUND GASTAUER, SIMONE GASTAUER FOEHR, B21 LTD., SHAMAL INTERNATIONAL FZE, AND WB21 DMCC<br>                    Relief Defendants. | 1:18-CV-12058-RGS |

**PLAINTIFF'S RESPONSE TO RELIEF DEFENDANT RAIMUND GASTAUER'S LOCAL RULE 56.1 STATEMENT AND ADDITIONAL FACTS IN <u>SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Securities and Exchange Commission (the "Commission") hereby responds to the additional factual assertions made by Relief Defendant Raimund Gastauer in his Local Rule 56.1 statement. *See* Dkt. No. 243, ¶¶119-131. The Commission contends that these additional facts, some of which are disputed, do not prevent this Court from granting summary judgment in the Commission's favor and against Raimund Gastauer and do not create a genuine issue to be tried. The Commission also provides additional facts that are necessary to rebut arguments Raimund Gastauer makes in opposing the Commission's motion for summary judgment.

**GASTAUER'S ADDITIONAL CLAIMED UNDISPUTED FACTS**

119. The leasehold known as Flat 2701, Dollar Bay Point, 3 Dollar Bay Place, London (E14 9AD) (the "Dollar Bay Point Property"), came into being on March 5, 2018, when it was

first registered with the HM Land Registry. Ex. 111. The closing date of the lease was March 23, 2018; the term of the lease was 999 years from 29 September 2016; and the leaseholder was GFT Investment Holdings SA, a company incorporated in the British Virgin Islands. *Id.* The price paid for the leasehold was £1,800,000. *Id.*

    **Commission's response**:  Undisputed.

    120. In March 2015, Raimund Gastauer became the sole shareholder and director of GFT Investment Holdings SA. Exs. 101, 102, 103.

    **Commission's response**:  Undisputed.

    121. On July 22, 2015, Mr. Gastauer and GFT Investment Holdings SA became the sole shareholders of a Monegasque company called GFO (MC) Investments, and Mr. Gastauer became the company's managing partner. Ex. 104.

    **Commission's response**:  Disputed.  Ex. 104, which is provided solely in French without an English translation, appears to refer to the creation of a company named GFO (MC) Investments in Monaco on July 22, 2015.  *See* Ex. 104 at 1.  The "cedant" or "transferor" appears to be Raimund Gastauer and the "cessionnaire" or "assignee" appears to be Michael Gastauer. *See id.*  The document does not support the assertion that GFT Investment Holdings SA is a shareholder of GFO (MC) Investments, and does not support the assertion that Raimund Gastauer is the managing partner of GFO (MC) Investments.

    This is a new document not identified in initial disclosures or in response to specific discovery requests seeking the production of any documents that Raimund Gastauer would use to support his defenses and the Court thus should not consider it in deciding this summary judgment motion.  Indeed, Fed. R. Civ. Proc. 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use

that information . . . to supply evidence on a motion . . . unless that failure was substantially justified or harmless." There is no justification for Raimund Gastauer, more than three years after being sued, to spring new information on the Commission, nor is the late disclosure harmless because discovery has closed and Raimund Gastauer grounds supposedly disputed facts on these newly produced, unverified, records.

122. On February 27, 2018, Mr. Gastauer divested himself of his ownership of GFT Investment Holdings SA by transferring all of his shares to GF Trust. Ex. 105. Mr. Gastauer is not, and has never been, a trustee of GF Trust. Ex. 106 ¶ 5.

**Commission's response**: Disputed. When Michael Gastauer sent corporate records for GFT Investment Holdings SA to Grant Saw on March 5, 2018, 6 days later after the date of Exhibit 105, and after previously stating he was waiting for updated corporate documents from his lawyers, he did not send corporate records that matched Ex. 105. *See* Ex. 126.[1] Rather, he sent corporate records that matched Ex. 101 (showing Raimund Gastauer as the sole director and shareholder of GFT Investment Holdings SA). *See* Ex. 127. Additional evidence, described below, demonstrates that Raimund Gastauer continued to be identified as the sole director of GFT Investment Holdings SA after February 27, 2018. *See infra*, ¶¶132-139. Moreover, while Raimund Gastauer claims not to be a trustee of GF Trust, he provides no information about who that entity's trustees, beneficiaries, owners or directors are.

Moreover, Exhibits 105 and 106 are new documents that were not identified in initial disclosures or produced in response to specific discovery requests seeking the production of any documents that Raimund Gastauer would use to support his defenses and the Court thus should

---

[1] The Commission files herewith a Further Appendix of Summary Judgment Exhibits and attaches thereto the additional exhibits referenced in this pleading. Because the exhibits submitted by Raimund Gastauer in opposition to the Commission's summary judgment motion ended with Exhibit 125, the Commission will begin numbering its new exhibits at Exhibit 126.

not consider them in deciding this summary judgment motion. Indeed, Fed. R. Civ. Proc. 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless that failure was substantially justified or harmless." There is no justification for Raimund Gastauer, more than three years after being sued, springing new information on the Commission, nor is the late disclosure harmless because discovery has closed and Raimund Gastauer grounds supposedly disputed facts on these newly produced, unverified, records.

123. On or about February 27, 2018, Mr. Gastauer divested himself of his control of GFT Investment Holdings SA by (1) transferring his ownership and control of GFO (MC) Investments to Michael Gastauer, and (2) substituting GFO (MC) Investments for himself as director of GFT Investment Holdings SA. Ex. 104 (Mr. Gastauer transfers his ownership interest in GFO (MC) Investments to Michael Gastauer, who agrees to become its managing partner); Ex. 107 (Mr. Gastauer resigns as its managing partner); Ex. 108 (meeting minutes reflect the adoption of these changes); Ex. 109 (restated articles likewise reflect that the changes were adopted); Ex 110 (GFO (MC) Investments becomes the director of GFT Investment Holdings SA).

**Commission's response**: Disputed. The cited documents do not support the factual assertions in this paragraph. Rather, Exhibits 104 and 107-110 suggest that, at best, Raimund Gastauer did not formally transfer his interest in GFO (MC) Investments to Michael Gastauer, or resign as the director of GFO (MC) Investments until March 2, 2018. *See* Ex. 104 at 5 ("Fait a Monaco, le 2 mars 2018" means "Done at Monaco, the 2nd of March 2018"); Ex. 107 (dated March 2, 2018); Ex. 109 at 1 ("statuts mis a jour au 2 mars 2018" means "status updated as of March 2, 2018"). Exhibit 108 is also dated March 2, 2018 and suggests that any share transfer from Raimund to Michael Gastauer did not happen until March 2, 2018. *See* Ex. 108 at 1, 3-4

(Article 6). Further, Exhibit 108 has a blank signature section, and there is thus no indication that it reflects a completed document. *See id.* at 4.

When Michael Gastauer sent corporate records for GFT Investment Holdings SA to Grant Saw on March 5, 2018, 6 days after the date of Exhibit 110, and 3 days after he purports to have assumed control of GFO (MC) Investments, and after previously stating he was waiting for updated corporate documents from his lawyers, he did not send corporate records that matched Ex. 110. *See* Ex. 126. Rather, he sent corporate records that showed Raimund Gastauer as the sole director and shareholder of GFT Investment Holdings SA. *See* Ex. 127. Additional evidence, described below, demonstrates that Raimund Gastauer continued to act as the sole director of GFT Investment Holdings SA after February 27, 2018. *See infra*, ¶¶132-139.

Moreover, Exhibits 104, 107, 108, 109 and 110 are new documents that were not identified in initial disclosures or produced in response to specific discovery requests seeking the production of any documents that Raimund Gastauer would use to support his defenses and the Court thus should not consider them in deciding this summary judgment motion. Indeed, Fed. R. Civ. Proc. 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless that failure was substantially justified or harmless." There is no justification for Raimund Gastauer, more than three years after being sued, springing new information on the Commission, nor is the late disclosure harmless because discovery has closed and Raimund Gastauer grounds supposedly disputed facts on these newly produced, unverified, records.

124. After Mr. Gastauer ceased being a member, shareholder, or director of GFT Investment Holdings, he no longer had any ownership of, control over, or direct or indirect interest in, that company. Ex. 106 ¶ 6.

**Commission's response**: Disputed. Contemporaneous evidence shows that Raimund Gastauer signed the lease for the Dollar Bay Property. *See* Exs. 131-133. Thus, even if the Court were to credit Raimund Gastauer's assertion that he was no longer a shareholder or director of GFT Investments Holdings SA after March 2, 2018, then 1) he controlled the funds used to purchase the Dollar Bay Property at least from February 27 to March 2, 2018, and 2) he exercised control over GFT Investments Holdings SA and its acquisition of the Dollar Bay Property by signing its lease, closing that purchase transaction and representing himself as the director authorized to act on behalf of that company, and using the money that C Capital Corp sent to Grant Saw to effectuate the purchase of the Dollar Bay Property. *See* Ex. 131-133.

Moreover, Exhibit 106 is a new document that was not identified in initial disclosures or produced in response to specific discovery requests seeking the production of any documents that Raimund Gastauer would use to support his defenses and the Court thus should not consider it in deciding this summary judgment motion. Indeed, Fed. R. Civ. Proc. 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless that failure was substantially justified or harmless." There is no justification for Raimund Gastauer, more than three years after being sued, springing new information on the Commission, nor is the late disclosure harmless because discovery has closed and Raimund Gastauer grounds supposedly disputed facts on these newly produced, unverified, records.

125. The paperwork required to make these changes in the ownership and control of GFT Investment Holdings SA was filed by Harney Westwood & Riegels LP ("Harneys"), a prominent BVI law firm. Ex. 123. After filing the paperwork, Harneys obtained updated copies of the Register of Members and Shareholders and the Register of Directors for GFT Investment Holdings SA and emailed those documents to Michael Gastauer on March 10, 2018. Id. Exhibit 105 is the updated Register of Members and Shareholders and Exhibit 110 is the updated Register of Directors.

**Commission's response**: Disputed. Ex. 123 does not indicate that anything was filed by Harneys, either before or after copies of purported documents were mailed to Michael Gastauer. *See id*. Ex. 123 also suggests that Michael Gastauer did not sign some unspecified document until March 7 (*see id.* at 1, bottom email message), thus rebutting any assumption that his actions were completed until that date. Also, the share certificate for GF Trust is not signed and there is no indication about who the trustees, beneficiaries, owners or directors of GF Trust are. *See id.* at 3-4. Thus, even if the Court were to credit Raimund Gastauer's assertion that he was no longer a shareholder or director of GFT Investments Holdings SA after March 2, 2018, then 1) he controlled the funds used to purchase the Dollar Bay Property at least from February 27 to March 2, 2018, and 2) he exercised control over GFT Investments Holdings SA and its acquisition of the Dollar Bay Property by signing its lease, closing that purchase transaction and representing himself as the director authorized to act on behalf of that company, and using the money that C Capital Corp sent to Grant Saw to effectuate the purchase of the Dollar Bay Property. *See* Exs. 131-133. Further, the updated share register that is purportedly attached to Ex. 123 was never provided to Grant Saw in connection with the Dollar Bay Property transaction. *See* Ex. 127, 130.

Moreover, Exhibit 123 is a new document that was not identified in initial disclosures or produced in response to specific discovery requests seeking the production of any documents that Raimund Gastauer would use to support his defenses and the Court thus should not consider it in deciding this summary judgment motion. Indeed, Fed. R. Civ. Proc. 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless that failure was substantially justified or harmless." There is no justification for Raimund Gastauer, more than three years after being sued, springing new information on the Commission, nor is the late disclosure harmless because discovery has closed and Raimund Gastauer grounds supposedly disputed facts on these newly produced, unverified, records.

126. By March 5, 2018 -- the date on which GFT Investment Holdings SA purchased the Dollar Bay Point Property -- Raimund Gastauer had ceased being an owner or director of GFT Investment Holdings SA and no longer had had any ownership of, control over, or direct or indirect interest in, that company. Ex. 106 ¶ 6.

**Commission's response**: Disputed. Contemporaneous evidence shows that Raimund Gastauer signed the lease for the Dollar Bay Property. *See* Ex. 131-133. Thus, even if the Court were to credit Raimund Gastauer's assertion that he was no longer a shareholder or director of GFT Investments Holdings SA after March 2, 2018, then 1) he controlled the funds used to purchase the Dollar Bay Property at least from February 27 to March 2, 2018, and 2) he exercised control over GFT Investments Holdings SA and its acquisition of the Dollar Bay Property by signing its lease, closing that purchase transaction and representing himself as the director authorized to act on behalf of that company, and using the money that C Capital Corp sent to Grant Saw to effectuate the purchase of the Dollar Bay Property. *See* Ex. 131-133.

Moreover, Exhibit 106 is a new document that was not identified in initial disclosures or produced in response to specific discovery requests seeking the production of any documents that Raimund Gastauer would use to support his defenses and the Court thus should not consider it in deciding this summary judgment motion.  Indeed, Fed. R. Civ. Proc. 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless that failure was substantially justified or harmless."  There is no justification for Raimund Gastauer, more than three years after being sued, springing new information on the Commission, nor is the late disclosure harmless because discovery has closed and Raimund Gastauer rests his entire defense on these newly produced, unverified, records.

127. The money GFT Investment Holdings SA used to purchase the Dollar Bay Point Property was wired by C Capital Corp. to an escrow account at Grant Saw solicitors. Ex. 124. Both wires cleared on February 27, 2018. Id. On that same date, Raimund Gastauer ceased being a member, director, or shareholder of GFT Investment Holdings SA and ceased having any ownership of, control over, or direct or indirect interest in, that company Exs. 104-109. Mr. Gastauer was never in possession, custody, or control of the funds wired from C Capital Corp. to Grant Saw solicitors nor had any ownership of, control over, or direct or indirect interest in those funds. Ex. 106 ¶ 7.

**Commission's response**:  The first two sentences are undisputed.  Also relevant is that, while both wires may have cleared on February 27, 2018, the first of the wires (in the amount of $1,400,905.25 or £989,270) was instructed to be sent on February 23, 2018 and was debited from C Capital Corp's account on February 23, 2018.  *See* Ex. 124 at 1 (third line showing "Instr Dt" or "instruction date" of February 23, 2018); Ex. 134 at 2 (Citibank C Capital account statement

showing debit of $1,400,905.25 on February 23, 2018).  Thus, at the time the first wire was sent to Grant Saw, it is undisputed that Raimund Gastauer was still the sole shareholder and director of GFT Investments Holdings SA, and the money was transferred so that entity could purchase the Dollar Bay Property.  He was also still the sole director of GFT Investment Holdings SA until at least March 2, 2018, by virtue of the fact that he was the sole director of GFO (MC) Investments until at least March 2.  *See* Exs. 107-109.

The third and fourth sentences of paragraph 127 are disputed.  The Commission incorporates its responses to paragraphs 122-126 above, which explain why it disputes the assertion that Raimund Gastauer ceased to be the sole director and shareholder of GFT Investments Holdings SA after February 27, 2018, and why he retained, or at minimum was identified as having, ownership of, control over, or direct or indirect interest in those funds after they were wired from C Capital Corp's Citibank account to Grant Saw.

Moreover, Exhibits 104 through 109 are new documents that were not identified in initial disclosures or produced in response to specific discovery requests seeking the production of any documents that Raimund Gastauer would use to support his defenses and the Court thus should not consider them in deciding this summary judgment motion.  Indeed, Fed. R. Civ. Proc. 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless that failure was substantially justified or harmless."  There is no justification for Raimund Gastauer, more than three years after being sued, springing new information on the Commission, nor is the late disclosure harmless because discovery has closed and Raimund Gastauer rests his entire defense on these newly produced, unverified, records.

128. In early 2016, Roger Knox opened a number of WB21 user accounts on behalf of Wintercap SA and its clients. Ex. 125. The accounts were formally opened by Richard Targett-Adams, a Wintercap SA employee. Id. On March 31, 2016, Targett-Adams, who had already opened accounts for Wintercap SA, contacted WB21's customer service about opening additional accounts on behalf of Wintercap SA clients. Id. Targett-Adams identified Wintercap SA as a Swiss asset management company and emphasized that the company was registered in Switzerland and regulated and authorized by SRO PolyReg. Id. SRO PolyReg is a self-regulatory organization recognized by the Swiss Financial Market Supervisory Authority (FINMA). *See* http://www.polyreg.ch/e/mitgliedschaft/faq.html. FINMA is the Swiss government body responsible for financial regulation. *Id.* SRO PolyReg monitors and enforces the implementation of due diligence of the Swiss Federal Act on the Prevention of Money-Laundering in the Financial Sector (MLA) by its members. *Id.*

In his communication with WB21's customer service department, Targett-Adams wrote:

> My company has recently opened some accounts with you for our own banking (1899381467 no). I work for a Swiss asset management company and would like to discuss opening accounts for my clients. Silverton SA is registered in the canton of Valais and we are regulated and authorised by Polyreg SRO. We work with HNW individuals and family offices on equity investment strategies.
>
> WB21's aim to redefine banking and increase efficiency is something I am very keen to explore further so that I can offer a better level of service to my clients. In the first instance, I would like to open perhaps 5 client accounts in order to gauge your service. Can the relevant contact please get in touch with me on this email or +41 79 325 5557 in order to discuss?

*Id.*

**Commission's response**: Undisputed that the referenced documents are quoted correctly. It is also undisputed that Knox, Targett-Adams and Gastauer took steps to give their businesses the veneer of being law-abiding businesses. Those "cover" communications do not

diminish the fact that Gastauer used his businesses, including the Entity Defendants, to lie to conceal Knox's fraudulent scheme and thereby aided and abetted that scheme. *See* Commission's Rule 56.1 Statement of Facts, Dkt. No. 232 ("SEC SOF") ¶¶91-96.

129. Knox ultimately used these WB21 accounts to transfer the proceeds of illegal stock trades back to the control group clients and to the Knox Defendants as payment for their services. Dkt. 231 (SEC Memo in Support of Its Motion For Summary Judgment) at 5-6. Raimund Gastauer is not a Knox Defendant, and the SEC does not allege that he is a control group client. Dkt. 54 (Amended Complaint).

**Commission's response**: Undisputed.

130. WB21 Pte. kept account ledgers for each of the WB21 accounts opened by Knox. *E,g.,* Ex. 86 (ledger for Wintercap SA's WB21 account); Ex. 93 (ledger for a Wintercap SA client's WB21 account). Each ledger tracked the WB21 user's incoming transfers, outgoing transfers, and balance. Ex. 114 at 51:19-52:2; Ex. 116 at 20:18-21:17. *Id.* The ledgers do not identify Raimund Gastauer as the recipient of any outgoing transfers.

**Commission's response**: Undisputed that the ledgers maintained by WB21 Pte. tracked certain incoming and outgoing transfers that were authorized by Knox, Wintercap SA and some of their clients. It is also undisputed that the WB21 Pte. ledgers do not record authorized transactions sending funds from the accounts of Knox, Wintercap SA and their clients to Raimund Gastauer. Raimund Gastauer's absence from those ledgers is immaterial, however, because the evidence shows that Michael Gastauer nonetheless transferred money from the Knox Defendants' trading proceeds to, or for the benefit of, Raimund Gastauer. *See* Exs. 80, 81, 124; SEC SOF, ¶¶28, 36, 38-40, 79, 82-83.

131. Trevor Donelan, a CPA and Enforcement Accountant with the SEC, obtained the ledgers for all of the WB21 accounts opened by Knox and analyzed them. Dkt. 233 (Decl. of Trevor Donelan) ¶¶ 1, 3, 23. The ledgers indicate that Knox transferred all but $11,264,415 of the money he deposited into those WB21 accounts to recipients, and that the $11,264,415 was still being held by WB21 Pte. *Id.* ¶ 23. SEC does not allege that Knox transferred any of the trading proceeds he deposited into his WB21 accounts to Raimund Gastauer. Dkt. 54 (Amended Complaint). Any money transferred from an Entity Defendant's bank account to Raimund Gastauer therefore did not represent the proceeds of Knox's trading activity.

**Commission's response**:  The first and third sentences are undisputed.  The second sentence is disputed because, while the ledgers show that Knox transferred all but $11,264,415 of the money he deposited into those WB21 accounts to recipients, the ledgers do not show anything at all about what funds WB21 Pte. possessed at any time.  Rather, the ledgers show only what WB21 Pte. owes to Knox and his clients.  The final sentence is disputed because it is not supported by the evidence.  To the contrary, the evidence shows that the funds transferred from the accounts of C Capital Corp. and WB21 US Inc. to Raimund Gastauer were proceeds of Knox's trading activity.  *See* Exs. 80, 81, 124; SEC SOF, ¶¶28, 36, 38-40, 79, 82-83.

## COMMISSION'S ADDITIONAL UNDISPUTED MATERIAL FACTS

132.   On February 19, 2018, Michael Gastauer wrote to Grant Saw to inform the firm that the buyer of the Dollar Bay Property would be GFT Investment Holdings SA.  *See* Ex. 126 at 2.  On February 20, 2018, Grant Saw responded that they would need for the purchasing company, "the memorandum and Articles of Association, Share register, certificate of good standing, evidence that you are the beneficial owner, bank statement showing the funds available to fund the purchase and how the company has acquired the funds" as well as documents relating

to Michael Gastauer personally. *See id.* at 1. On February 21, 2018, Michael Gastauer replied, sent his documents, and said that he was "waiting for the [British Virgin Island] attorneys to submit the most recent set of documents regarding the buyer." *Id.*

133. On March 5, 2018, Michael Gastauer wrote to Grant Saw and stated "I am sending you attached the corporate documents for GFT Investment Holdings." Ex. 127 at 1. Attached were the register of directors and the register of members for GFT Investment Holdings SA. *See id.* at 6, 7. Those attached documents listed Raimund Gastauer as the sole director and sole shareholder of GFT Investment Holdings SA. *See id.*

134. When Grant Saw reviewed the GFT Investments Holdings SA corporate documents, they noted that Michael Gastauer was not the director and member of GFT Investment Holdings SA when Michael had previously told them that he was the director and shareholder of both the BVI company (GFT Investment Holdings SA) and the US company (C Capital Corp.). *See* Ex. 128 at 1. Grant Saw then asked "[w]ho is Raimund Gastauer? I will require notarized ID (passport, two recent proofs of address). If he holds the shares on trust for you then a certified copy of the trust document is required." *Id.* Michael Gastauer also lied to Grant Saw about the "business activity" of C Capital Corp., claiming that it was his "personal investment vehicle, financing real estate and private equity transactions." *Id.* at 2.

135. On March 13, 2018, Grant Saw wrote to Michael Gastauer stating that it needed to sort out the AML (anti-money-laundering) checks before the transaction could close and asked again whether his father held the GFT Investments Holdings SA shares in trust for him, and reminded Michael that when his father came to London for the closing, "he will have to produce his original passport and two proofs of address preferably documents that have not been downloaded and are bills or bank statements which were posted to your father in the last three

months." Ex. 129 at 1.  Michael Gastauer replied on March 14, 2018, stating that, with respect to GFT Investments Holdings SA, "[t]o keep things simple, we can assume my father as the sole shareholder.  He is not holding shares in trust." *Id.*

136.    As the Dollar Bay Property transaction progressed, on March 22, 2018, Grant Saw confirmed to the Dollar Bay Property's sellers that that the sale contract "is to be signed by the director Raimund Albrecht Erwin Gastauer in the presence of a witness." Ex. 130 at 6.

137.    In connection with the closing of the Dollar Bay Property lease transaction, on March 23, 2018, Grant Saw confirmed to the seller that they "met with Michael and Raimund Gastauer yesterday and Raimund has signed a complete copy of the lease, plans and contract." Ex. 131 at 2.

138.    After the Dollar Bay lease transaction closed, an issue arose about the need for amendments.  On April 9, 2018, Grant Saw informed Michael Gastauer to the developer's solicitors "are insisting that your father signs a further counterpart lease as attached.  Page 37 is the signature page.  Would you like me to print and post a hard copy to him and he can sign in the presence of a witness . . . ?"  Grant Saw also informed Michael Gastauer that it would need Raimund Gastauer's "signed hard copy" to be returned to them.  Ex. 132 at 1, 51 (signature page prepared for Raimund Gastauer's signature as the director of the Lessee, GFT Investment Holdings SA).

139.    On April 24, 2018, Michael Gastauer wrote to Grant Saw to ask if they had received his letter with the agreement signed by Raimund so that the registration of the Dollar Bay Property could be finalized.  *See* Ex. 133 at 1.

140.    The Commission analyzed the payments made to or for the benefit of Knox and his clients from WB21-related entities.  It observed that substantially all of those payments were

made out of WB21-related entity accounts into which Knox's trading proceeds were deposited directly or indirectly. The Commission specifically observed payments being made to or for the benefit of Knox and his clients from the Entity Defendants and from Relief Defendant WB21 DMCC. *See* Supplemental Declaration of Trevor Donelan ("Supp. Donelan Dec."), ¶¶4-7.

141. When WB21 Group entities made payments to Knox or his clients in currencies other than U.S. Dollars, they most often did so from the United States Entity Defendants' bank accounts or the accounts of WB21 DMCC (that were funded from the U.S. Entity Defendants' bank accounts). *See id*.

142. For example, wire detail records produced by Citibank show that Citibank accounts in the names of Entity Defendants WB21 US Inc., C Capital Corp. and B2 Cap Inc. made the following payments by sending wires denominated in foreign currency out of U.S. Dollar-denominated bank accounts:

| **Wires Sent from Entity Defendants' Citibank Accounts from 5/4/2016 to 3/30/2018** | | | |
|---|---|---|---|
| **Foreign Currency** | **Number of Wires Sent** | **US Dollar Equivalent Total** | **From Accounts Held By:** |
| AUD - Australian Dollars | 2 | $8,386.67 | WB21 US Inc. |
| CAD - Canadian Dollars | 119 | $10,157,253.82 | WB21 US Inc., C Capital Corp., B2 Cap Inc. |
| CHF - Swiss Francs | 12 | $1,145,343.84 | WB21 US Inc., C Capital Corp. |
| EUR – Euros | 54 | $3,933,342.88 | WB21 US Inc., C Capital Corp., B2 Cap Inc. |
| GBP – British Pounds | 23 | $3,612,328.24 | WB21 US Inc., C Capital Corp., B2 Cap Inc. |
| HKD – Hong Kong Dollars | 2 | $10,241.90 | WB21 US Inc., C Capital Corp. |
| JPY – Japanese Yen | 8 | $416,832.85 | WB21 US Inc. |
| SGD – Singapore Dollars | 3 | $127,962.86 | WB21 US Inc., B2 Cap Inc. |
| Totals: | 223 | $19,415,429.56 | |

*See id.*, ¶8.

|  |  |
|---|---|
|  | Respectfully submitted, |
| April 15, 2022 | SECURITIES AND EXCHANGE COMMISSION |
|  | By its attorneys, |
|  | /s/ Kathleen Shields_____<br>Kathleen Shields<br>Eric Forni<br>Nita Klunder<br>33 Arch Street, 24th Floor<br>Boston, MA 02110<br>Telephone: (617) 573-8904 (Shields direct);<br>(617) 573-8822 (Klunder direct)<br>Fax: (617) 573-4590<br>Email: shieldska@sec.gov; Klunder ni@sec.gov;<br>fornie@sec.gov |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2022, a true and correct copy of the foregoing document was filed through the Court's CM/ECF system, and accordingly, the document will be sent electronically to all participants registered to receive electronic notice in this case. A copy will also be sent via first class mail and/or email to those parties who have not yet registered for notice via the Court's CM/ECF system.

/s/ Kathleen Shields_____
Kathleen Shields