UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-12058-RGS

SECURITIES AND EXCHANGE COMMISSION,
Plaintiff

v.

ROGER KNOX, WINTERCAP S.A., MICHAEL T. GASTAUER, WB21 US INC., SILVERTON SA INC., WB21 NA INC., C CAPITAL CORP., WINTERCAP SA INC., and B2 CAP INC.,
Defendants

and

RAIMUND GASTAUER, SIMONE GASTAUER FOEHR, B21 LTD., SHAMAL INTERNATIONAL FZE, and WB21 DMCC,
Relief Defendants

MEMORANDUM AND ORDER
ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

June 3, 2022

STEARNS, D.J.

The United States Securities and Exchange Commission (the Commission or SEC) brought this case against the perpetrators of a transnational securities fraud involving the sale of over $150 million of unregistered penny stocks. Before the court is the Commission's motion for summary judgment against certain of the defendants, WB21 US Inc., Silverton SA Inc., WB21 NA Inc., C Capital Corp., Wintercap SA Inc., and B2

Cap Inc. (the Entity Defendants), and some of the alleged beneficiaries of the scheme, Raimund Gastauer, B21 Ltd., and WB21 DMCC (the Relief Defendants). The Commission accuses the Entity Defendants of aiding and abetting violations of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 (Securities Act), Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act), and Rule 10b-5 thereunder. As against the Relief Defendants, the Commission seeks summary judgment on claims of unjust enrichment. The only defendant to oppose the motion is Raimund Gastauer (Gastauer), who argues that he is not a proper Relief Defendant. For the following reasons, the motion will be allowed in part and denied in part.

## BACKGROUND

Defendant Roger Knox orchestrated the scheme through Switzerland-based Wintercap SA (formerly known as Silverton SA).[1] Wintercap SA's platform allowed public company "control persons" to make secret sales of securities in violation of disclosure and registration requirements. The control persons typically hid ownership of the shares through the use of

---

[1] The court will refer to Knox and Wintercap SA collectively as the Knox Defendants.

nominee entities. They then transferred blocks of the shares to Wintercap SA, which deposited them in omnibus brokerage accounts. Investors who purchased the shares were unaware that the true sellers were corporate insiders dumping shares at a hyped-up value. Knox earned millions of dollars in fees from these sales from 2015 until his arrest in October of 2018.

Defendant Michael Gastauer owned the WB21 group, which included the Entity Defendants. WB21 Pte. managed the online money transmittal service used by the Knox Defendants to launder the proceeds of the control persons' fraudulent sales through bank accounts held in the names of the Entity Defendants. When banks became suspicious of the Entity Defendants' churning of the accounts, Michael Gastauer lied about the reasons for the transfers.

Michael Gastauer also transferred money out of the Entity Defendants' accounts for the benefit of the Relief Defendants. According to the Commission, Relief Defendant Raimund Gastauer received a net amount of $3,315,305 in illicit funds, while $824,689 was fraudulently transferred to B21 Ltd. and $554,460 to WB21 DMCC. Raimund Gastauer disputes that he received the lion's share of the amount the SEC identifies and that the transfers to him were proceeds of the fraud.

3

# DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A dispute is genuine where the evidence, viewed in the light most flattering to the nonmovant, is such that a reasonable jury could resolve the dispute in favor of either party. *See S.E.C. v. Ficken*, 546 F.3d 45, 51 (1st Cir. 2008). A fact is material "when it has potential of changing a case's outcome." *Doe v. Trs. Of Bos. Coll.*, 892 F.3d 67, 79 (1st Cir. 2018). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). The burden then shifts to the nonmoving party to "adduce specific, provable facts demonstrating that there is a triable issue." *Id.*

## *Aiding and Abetting Liability of the Entity Defendants*

To establish aiding and abetting liability under the securities laws, the SEC must prove: (1) "a primary violation was committed"; (2) "the defendant was generally aware that his role or conduct was part of an overall activity that was improper"; and (3) "the defendant knowingly and substantially assisted in the primary violation." *S.E.C. v. Tambone*, 550 F.3d 106, 144

4

(1st Cir. 2008), *rev'd on other grounds*, 597 F.3d 436 (1st Cir. 2010); *see also Graham v. S.E.C.*, 222 F.3d 994, 1000 (D.C. Cir. 2000).

(1)  Aiding and Abetting: Fraud Violations

Section 17(a) of the Securities Act makes it unlawful "for any person in the offer or sale of any securities" to "employ any device, scheme, or artifice to defraud."  15 U.S.C. § 77q(a)(1).  Similarly, Exchange Act Section 10(b) provides that it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance."  15 U.S.C. § 78j(b).  Rule 10b-5 also prohibits fraud or deceit "in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5.  Liability under each provision also requires a showing of materiality and scienter.  *See Flannery v. S.E.C.*, 810 F.3d 1, 9 (1st Cir. 2015).

The Knox Defendants admitted that they engaged in securities fraud. Knox pled guilty to violating Section 10(b) by operating Wintercap SA as a vehicle to disguise the sales by public company control persons of inflated shares, thereby defrauding investors.  *See* Tr. of Rule 11 Hearing at 17-23, *United States v. Knox*, No. 18-cr-10385 (Dkt # 102).

5

The SEC has established, and the Entity Defendants do not contend otherwise, that they were aware of the fraud and knowingly and substantially assisted in its execution. *See* Statement of Material Facts (SOF) (Dkt # 232) ¶¶ 38, 49, 57, 66, 78, 83, 90; *see also* SOF ¶¶ 91-96 (laying out Michael Gastauer's role directing the fraudulent activities of the Entity Defendants).

(2)   Aiding and Abetting: Registration Violations

Second, the SEC has also established that the Entity Defendants aided and abetted the Knox Defendants' violations of Sections 5(a) and 5(c) of the Securities Act, and again, the Entity Defendants do not contest their liability. Section 5(a) makes it unlawful to sell or transport an unregistered security through the mail or interstate commerce, *see* 15 U.S.C. § 77e(a), while Section 5(c) prohibits persons from offering to sell or buy unregistered securities, s*ee* 15 U.S.C. § 77e(c).   To establish a violation of Sections 5(a) and 5(c), the SEC must show that "(1) no registration statement was in effect for the securities in question at the time they were sold; (2) the defendant directly or indirectly sold or offered to sell the securities; and (3) the sale or offer of sale was made through interstate commerce." *S.E.C. v. Jones*, 300 F. Supp. 3d 312, 315 (D. Mass. 2018), citing *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013).

As the SEC's evidence demonstrates, the Knox Defendants were primary violators of Section 5. Of the issuers whose securities Wintercap SA traded on behalf of its control group clients, eighteen did not file registration statements disclosing the sales through Wintercap SA's brokerage accounts. *See* SOF ¶ 30. Further, Knox admitted to selling unregistered penny stocks through the Wintercap SA platform, which took advantage of interstate wire and banking systems. *See id.* ¶¶ 18, 25. Accordingly, the Commission has shown that the Knox Defendants violated Section 5. It is undisputed that the Entity Defendants were aware of the Knox Defendants' registration violations and provided substantial assistance.

### *Injunctive Relief, Civil Penalties, and Disgorgement Against the Entity Defendants*

(1) Injunctive Relief

The Commission seeks to permanently enjoin the Entity Defendants from engaging in further violations of the securities laws.[2] *See* 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d)(1). Injunctive relief is appropriate when there is a "reasonable likelihood of future violations," which is assessed by looking

---

[2] The court previously entered a preliminary junction against the Entity Defendants. *See* Order (Dkt # 46) at 5-6.

at "the nature of the violation, including its egregiousness and its isolated or repeated nature, as well as whether the defendants will, owing to their occupation, be in a position to violate again . . . . [and] whether the defendants have recognized the wrongfulness of their conduct." *S.E.C. v. Sargent*, 329 F.3d 34, 39 (1st Cir. 2003).  The Entity Defendants, for their part, do not contest the SEC's request that permanent injunctions issue.

While no one factor is dispositive, the court agrees that the conduct of the Entity Defendants was egregious.  They were integral participants in the money laundering and have not acknowledged responsibility for the fraud, as evidenced by their failure to respond to the SEC's motion for summary judgment.  The court will issue permanent injunctions against the Entity Defendants.

(2)   Civil Monetary Penalties

The Commission also seeks an order imposing a $1,035,909 third-tier civil monetary penalty against each Entity Defendant.  *See* 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d).  A third-tier penalty requires a finding that a defendant's violation involved fraud, deceit, or manipulation, and resulted in substantial losses or created a significant chance of substantial losses to others.  *See* 15 U.S.C. § 77t(d)(2)(B)-(C).  While the relevant tier

8

determines the maximum penalty a court may impose, the size of a civil monetary penalty is ultimately within the court's discretion. *See S.E.C. v. Lemelson*, 2022 WL 952264, at *4 (D. Mass. Mar. 30, 2022). The relevant factors courts look to in determining an appropriate penalty include "the egregiousness of the violation, the willingness to admit wrongdoing, the isolated or repeated nature of the violations, the degree of scienter involved, the defendant's willingness to cooperate with the authorities and the defendant's current financial situation." *S.E.C. v. Weed*, 315 F. Supp. 3d 667, 677 (D. Mass. 2018), citing *S.E.C. v. Esposito*, 260 F. Supp. 3d 79, 93 (D. Mass. 2017).

The Commission argues that the Entity Defendants' conduct qualifies for a third-tier penalty, and that the court should exercise its discretion to award the maximum $1,035,909 penalty against each Entity Defendant. *See* 17 C.F.R. § 201.1001(b). After reviewing the relevant factors, the court agrees that the maximum third-tier penalty is warranted. The Entity Defendants' conduct consisted of deceit and manipulation (in the form of Michael Gastauer's lies to banks) and was a necessary component of a fraud that resulted in significant losses to investors. The Entity Defendants' violations were deliberate, egregious, and long-lasting. They have neither

9

cooperated nor admitted wrongdoing, nor have they produced evidence suggesting an inability to pay. Accordingly, the court will award third-tier civil monetary penalties of $1,035,909 against each Entity Defendant.

(3) Disgorgement and Prejudgment Interest

The Commission further seeks an order of disgorgement against the Entity Defendants. *See* 15 U.S.C. § 78u(d)(7). Disgorgement is an equitable remedy designed to benefit investor victims. *See Liu v. S.E.C.*, 140 S. Ct. 1936, 1947 (2020). Because disgorgement is not a punitive remedy, a disgorgement order must not exceed "a wrongdoer's net unlawful profits," plus interest. *Id.* at 1943. The amount of disgorgement, however, "need only be a reasonable approximation of profits causally connected to the violation," and "[t]he risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty." *S.E.C. v. Happ*, 392 F.3d 12, 31 (1st Cir. 2004) (internal citations omitted). Co-defendants may be jointly and severally liable for disgorgement where they were "partners engaged in concerted wrongdoing." *Id.* at 1949; *see also S.E.C. v. Esposito*, 2018 WL 2012688, at *9 (D. Mass. Apr. 30, 2018) (collecting cases and holding defendants jointly and severally liable for disgorgement because their violations were "closely intertwined").

10

The court agrees that the Entity Defendants are jointly and severally liable to disgorge their ill-gotten profits. Michael Gastauer interspersed the proceeds from the Knox Defendants' fraudulent sales of securities in the Entity Defendants' various accounts before transferring them back to their clients. The interchangeable role the Entity Defendants played within the scheme makes joint and several liability appropriate. The Commission has shown that the Entity Defendants and their related companies are holding $11,264,415 in proceeds from the fraud, *see* Decl. of Trevor T. Donelan (Donelan Decl.) (Dkt # 233) ¶ 23, and seeks disgorgement of that amount against the Entity Defendants with two exceptions. According to the Commission, Entity Defendants Wintercap SA Inc. and B2 Cap Inc. received lesser proceeds of the fraud and should only disgorge the amounts that passed through their accounts: $3,668,900 in the case of Wintercap SA Inc., and $2,346,728 in the case of B2 Cap Inc. *See id*. ¶ 15. The court agrees and will order the Entity Defendants WB21 US Inc., WB21 NA Inc., Silverton SA Inc., and C Capital Corp., jointly and severally liable to disgorge $11,264,415, Wintercap SA Inc. to disgorge $3,668,900, and B2 Cap Inc. to disgorge $2,346,728.

Considering the Entity Defendants' retention of unlawful gains, the

11

court also exercises its discretion to award prejudgment interest. *See Sargent*, 329 F.3d at 40. The court agrees with the Commission's proposed adoption of the Internal Revenue Service's rate for tax underpayment (IRS Underpayment Rate), which other courts have used in the context of securities violations. *See, e.g.*, *S.E.C. v. Druffner*, 802 F. Supp. 2d 293, 298 (D. Mass. 2011). The Commission submits, and the court agrees, that the starting point for prejudgment interest should be August 14, 2018, when the Entity Defendants ceased making transfers on behalf of the Knox Defendants and retained the $11,264,415 in fraudulent proceeds. *See* Donelan Decl. ¶ 28. The Entity Defendants' total joint and several liability for disgorgement and prejudgment interest is as follows:

- B2 Cap Inc.: $2,708,507 total ($2,346,728 disgorgement and $361,779 prejudgment interest);

- C Capital Corp.: $13,000,974 total ($11,264,415 disgorgement and $1,736,559 prejudgment interest);

- Silverton SA Inc.: $13,000,974 total ($11,264,415 disgorgement and $1,736,559 prejudgment interest);

- WB21 NA Inc.: $13,000,974 total ($11,264,415 disgorgement and $1,736,559 prejudgment interest);

- WB21 US Inc.: $13,000,974 total ($11,264,415 disgorgement and $1,736,559 prejudgment interest); and

- Wintercap SA Inc.: $4,252,418 total ($3,668,900 disgorgement and

$583,518 prejudgment interest).

### *Liability of the Relief Defendants*

Federal courts possess "broad equitable powers" to order relief against "non-violating third parties who have received proceeds of others' violations to which the third parties have no legitimate claim." *S.E.C. v. World Capital Mkt., Inc.*, 864 F.3d 996, 1003 (9th Cir. 2017); *accord S.E.C. v. Tropikgadget FZE*, 2017 WL 722573, at *5 (D. Mass. Feb. 23, 2017). The Commission must show that the Relief Defendants "(1) ha[ve] received ill-gotten funds; and (2) do[] not have a legitimate claim to those funds." *S.E.C. v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998). Whether a relief defendant has a legitimate claim to funds turns on whether it provided services or value in exchange for the funds, or whether it received them gratuitously. *See F.T.C. v. Direct Mktg. Concepts, Inc.*, 569 F. Supp. 2d 285, 311 (D. Mass. 2008); *see also Cavanagh*, 155 F.3d at 137 (holding that a relief defendant did not have legitimate claim to stock she had received as gift).

(1)   Unjust Enrichment Claims Against B21 Ltd. and WB21 DMCC

Relief Defendants B21 Ltd. and WB21 DMCC do not contest the Commission's unjust enrichment claims. The Commission has shown that various Entity Defendants controlled by Michael Gastauer sent B21 Ltd.

13

$554,460, and WB21 DMCC $824,689, in proceeds from the fraud. *See* SOF ¶¶ 98-106. The Commission has further demonstrated that neither Relief Defendant conducted business in the United States and thus, neither performed any services that would have entitled them to these funds. *See id*. The court will therefore enter summary judgment against B21 Ltd. and WB21 DMCC on the Commission's claims of unjust enrichment.

 (2) Unjust Enrichment Claim Against Raimund Gastauer

Raimund Gastauer, for his part, denies having received any of the Knox Defendant funds attributed to him. The Commission contends that its evidence shows that Gastauer received a total of $3,315,305 in fraudulent proceeds: a December 26, 2017, transfer of $500,000 from Entity Defendant WB21 US Inc., to a bank account in his name (December 26 Transfer), and two February 27, 2018, transfers totaling $2,815,305 from Entity Defendant C Capital Corp., to Grant Saw Solicitors LLP (February 27 Transfers). The February 27 Transfers are alleged to have been in consideration for the purchase of a London condominium in the name of GFT Investment Holdings SA, of which Gastauer was the Trustee. *See* Donelan Decl. ¶¶ 29-30.

Gastauer makes two arguments in opposition. First, because the

WB21 group of companies pooled users' funds in omnibus accounts, he contends that the Commission cannot prove that the Knox Defendants owned the WB21 funds transferred to him at the time of the transfers. He maintains that all of the funds at issue were either transferred to the control persons or remained in WB21 Pte. accounts (which records show contain $11,264,415). Second, Gastauer argues that he did not have an interest in GFT Investment Holdings when C Capital Corp. transferred the $2,815,305 to Grant Saw that were used to purchase the London condominium on its behalf. The court rejects the first argument but acknowledges the second for purposes of summary judgment.

With respect to the disputed Transfers, the undisputed declaration of Commission forensic accountant Trevor Donelan establishes that the December 26 Transfer originated with WB21 US Inc., which received 87.4% of its total deposits from Wintercap SA accounts or from the accounts of other Entity Defendants (with an additional 6% coming from accounts of nominee entities affiliated with the fraud). *See* Donelan Decl. ¶¶ 9-10. In similar fashion, the February 27 Transfers originated with C Capital Corp., which received 99.4% of its total deposits from Wintercap SA accounts or from the accounts of other Entity Defendants. *See id.* ¶ 9.

15

Gastauer does not present evidence disputing the forensic accounting evidence. Rather, he makes a "netting" argument — that the WB21 group's use of omnibus accounts precludes any certainty that the funds he received were proceeds of the fraud. This is a creative theory, and nothing more, in search of proof. Conjecture standing alone does not create a disputed issue of material fact.

Moreover, the fact that WB21 Pte. allegedly has $11,264,415 of the Knox Defendants' proceeds on hand is of no consequence. *See* Donelan Decl. ¶ 23. Gastauer argues that WB21 Pte. ledgers — which do not list the December 26 and February 27 Transfers — account for all proceeds of the fraud except for the $11,264,415 amount, which WB21 Pte. still holds. Gastauer does not dispute that the December 26 and February 27 Transfers took place, and that the Commission has shown by a preponderance of the evidence that they consisted of proceeds of the fraud. The court need not speculate as to why the December 26 and February 27 Transfers were not recorded in WB21 Pte's ledgers; it is enough that the only evidence in the record shows that the transfers contained proceeds from the fraud, with no proof to the contrary.

There is, however, a genuine dispute of fact whether the February 27

16

Transfers used to purchase the London condominium were for the benefit of Gastauer. The parties agree that on February 27, 2018, C Capital Corp., transferred $2,815,305 to a client account of Grant Saw in London. *See* Opp'n (Dkt # 242) at 8. The parties further agree that GFT Investment Holdings used the proceeds to purchase the condominium at 3 Dollar Bay Place, London. *See id.* However, the parties differ over whether Gastauer retained an interest in GFT Investment Holdings at the time of the transfer. Gastauer maintains that he had divested himself of his interest in GFT Investment Holdings on February 27, 2018, before the Dollar Bay purchase took place.

The Commission has produced evidence showing that Gastauer signed the lease and sale contract for the Dollar Bay Property. *See* Reply Exs. 131-133 (Dkt # 250-6, 250-7, 250-8). The Commission has also shown that Michael Gastauer sent Grant Saw documents stating that Raimund Gastauer was the sole director and shareholder of GFT Investment Holdings. *See* Reply Ex. 127 (Dkt # 250-2) at 6-7. What the Commission has not shown is that Gastauer ever possessed the funds from the February 27 Transfers, that he controlled GFT Investment Holdings at the time of the Dollar Bay Property purchase, that he controls the Dollar Bay Property now, or that it

17

was purchased for his benefit. Gastauer for his part has submitted a sworn declaration that by the time of the purchase of Dollar Bay Property, he was no longer the sole director and shareholder of GFT Investment Holdings. *See* Gastauer Decl. (Dkt # 244-6) ¶ 6. While Gastauer's litigating position raised issues of credulity, these cannot be resolved on the existing summary judgment record.[3]

The Commission, on the other hand, has established that Gastauer received $500,000 in fraudulent proceeds from the December 26 Transfer. Gastauer does not dispute that he has no legitimate claim to these funds.

---

[3] Gastauer failed produce in discovery some of his evidence in support of the argument that he was not a director or shareholder of GFT Investment Holdings at the time of the Dollar Bay purchase. The court may sanction a party that uses evidence it did not produce in discovery unless the failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Gastauer equivocates at best over his purported justification that he did not possess the relevant documents during discovery and thus could not have produced them. *See* Second Decl. of Raimund Gastauer (Dkt # 254-1) ¶ 5 (stating that Gastauer did not "to the best of [his] memory" possess the relevant documents, he "believe[s]" he had never seen them before, and that he "did not recall any of these documents" when he received discovery requests). Gastauer states he obtained the documents outside of the discovery process while preparing to oppose the Commission's motion for summary judgment. *See* Sur-reply (Dkt # 254) at 2. His failure to gather and produce relevant evidence during the discovery period – which ended in September of 2020 – does not justify surprising the Commission with the new documents now. As a remedy for Gastauer's discovery violation, the court will allow the Commission to conduct additional discovery into Gastauer's interest in the Dollar Bay Property and to resubmit its motion for summary judgment as to that issue or move for a bench trial on the issue.

*See* Gastauer's Responsive Statement of Material Facts (GSOF) (Dkt # 243) ¶ 108. Thus, he is a proper relief defendant subject to disgorgement as to the December 26 Transfer.

### *Disgorgement Against the Relief Defendants*

The court will order disgorgement against Relief Defendants WB21 DMCC and B21 Ltd. in the amount of their undisputed ill-gotten gains from the fraud. The court further orders prejudgment interest as calculated by the SEC using the IRS Underpayment Rate. Appropriately, Donelan calculated prejudgment interest using the final date each Relief Defendant received the relevant transfers as the starting date. *See* Donelan Decl. ¶¶ 36-38. The court orders disgorgement and prejudgment interest as follows:

- WB21 DMCC: $634,645 total ($554,460 disgorgement and $80,185 prejudgment interest); and

- B21 Ltd.: $943,955 total ($824,689 disgorgement and $119,266 prejudgment interest).

### ORDER

For the foregoing reasons, the Commission's motion for summary judgment is <u>ALLOWED IN PART</u> and <u>DENIED IN PART</u>. The clerk will enter judgment against the Entity Defendants and Relief Defendants WB21 DMCC and B21 Ltd. The court will set a schedule for the Commission's

additional discovery on Gastauer's relationship with GFT Investment Holdings at the time of the Dollar Bay Property purchase.

                         SO ORDERED.

                         /s/ Richard G. Stearns
                         UNITED STATES DISTRICT JUDGE